## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## ALEXANDRIA DIVISION

_____ )
IN RE:                                          )
                                                )
MARIEL ALEJANDRA CASTELLON                      )      Case No. 19-13963-KHK
                                                )
                                                )      Chapter 7
        Debtor                                  )
_____ )

## TRUSTEE'S APPLICATION FOR APPROVAL OF REAL ESTATE
## LISTING AGREEMENT AND EMPLOYMENT OF REALTOR

Janet M. Meiburger, Chapter 7 Trustee herein (the "Trustee"), by her undersigned

proposed counsel, respectfully requests entry of an order authorizing the employment of Helaine

Newman of the firm Berkshire Hathaway Home Services-PenFed Realty as the exclusive listing

agent for the sale of real property located at 418 Old Courthouse Road, NE, Vienna, VA 22180

(the "Property").  In support of this Application, the Trustee states as follows:

1.      The Debtor commenced this case by filing a voluntary petition for relief under

Chapter 13 of the Bankruptcy Code on December 4, 2019 (the "Petition Date"). The case was

converted to Chapter 7 on January 2, 2020 (Docket No. 16). Janet M. Meiburger is the duly

qualified and acting Trustee in this case (Docket No. 17).

2.      Included among the property of the bankruptcy estate is the Debtor's 100%

ownership interest in the Property.

3.      The Trustee proposes to market the Property for sale at a listing price of

$725,000.00 upon the terms of the listing agreement attached as Exhibit A (the "Listing

_____
Janet M. Meiburger, VA Bar No. 31842
The Meiburger Law Firm, P.C.
1493 Chain Bridge Road, Suite 201
McLean, VA 22101
(703) 556-7871
Proposed Counsel to Chapter 7 Trustee

Agreement"). This price is based on Ms. Newman's inspection of the Property, on her research and recommendation based on her experience in the real estate market, and on her analysis of current listings and comparable sales. Ms. Newman is an experienced and knowledgeable real estate agent.

4.      The Trustee obtained a title abstract for the Property which shows two mortgages and one judgment lien on the Property. The Bank of New York Mellon Trust Company, National Association holds the first mortgage on the Property. According to the Motion for Order Granting Relief from Automatic Stay Under 11 USC § 362 (Docket No. 30), the estimated amount due on the first mortgage was $523,278.08 as of February 4, 2020. Specialized Loan Servicing is the servicer for the second mortgage on the Property. According to the Debtor's Schedule D, the amount owed on the second mortgage was approximately $218,303.18 as of the Petition-Date. There is also a judgment lien against the Property, which is junior to the mortgages. There is insufficient equity in the Property to pay the second mortgage or the judgment lien. Therefore, the Property will be sold as a short sale. The Trustee will request that the sale be free and clear of the judgment lien pursuant to 11 U.S.C. § 363(f)(3).

5.      To the best of the Trustee's knowledge, except as stated in the Declaration of Helaine Newman attached hereto as Exhibit B, Ms. Newman has no connection with any party in interest or their attorneys or accountants, the United States Trustee, or any persons employed in the Office of the United States Trustee, has no interest adverse to the bankruptcy estate that would disqualify her from employment, and is a disinterested person as such term is defined by 11 U.S.C. § 101(14).

6.      The Listing Agreement provides for an exclusive listing of the Property with Ms. Newman, terminating at 11:59 p.m. on August 31, 2020.  Ms. Newman will pay all costs for marketing and advertising the Property.

7.      As provided in the Listing Agreement, upon receipt of one or more qualified

offers for the Property acceptable to the Trustee, the Trustee will then seek the approval of this

Court to authorize the sale of the Property and the compensation of Ms. Newman with respect

thereto. Pursuant to the Listing Agreement, the commission due on sale of the Property will be

six percent (6%) of the sale price.

8.      At the request of the U.S. Trustee's office, the Trustee has not agreed to the dual

agency and designated agency provisions of the listing agreement.

WHEREFORE, the Trustee respectfully requests this Court enter the proposed order

attached hereto as Exhibit C authorizing the employment of Ms. Newman and approving the

Listing Agreement.

Respectfully submitted

THE MEIBURGER LAW FIRM, P.C.

Dated: February 19, 2020          By: /s/ Janet M. Meiburger
                                      Janet M. Meiburger, Esq., VSB No. 31842
                                      The Meiburger Law Firm, P.C.
                                      1493 Chain Bridge Road, Suite 201
                                      McLean, Virginia 22101
                                      (703) 556-7871
                                      Proposed Counsel to Chapter 7 Trustee

<u>CERTIFICATE OF SERVICE</u>

I HEREBY certify that on this 19th day of February, 2020, a true and correct copy of the

foregoing Trustee's Application for Approval of Real Estate Listing Agreement and

Employment of Realtor will be served by ECF e-mail pursuant to the applicable Standing Order

of the Court, and by e mail on Helaine Newman at helainesells@gmail.com.


 /s/ Janet M. Meiburger
Janet M. Meiburger

# EXHIBIT A

*JMM JC*

**BERKSHIRE HATHAWAY** HomeServices

## EXCLUSIVE RIGHT TO SELL LISTING AGREEMENT

PenFed Realty

This Exclusive Right to Sell Listing Agreement ("Agreement") is made on **February 14, 2020** ("Date") by and between **Janet M. Meiburger, Bankruptcy Trustee** *for Mariel Alejandra Castellon Case # 19-13963* ("Seller") and (Insert Firm Name) **BHHS PenFed Realty** ("Broker").

1. **APPOINTMENT OF BROKER.** In consideration of the services provided by Broker and described in this Agreement, Seller hereby appoints Broker as Seller's sole and exclusive listing agent and grants Broker the exclusive right to sell the real property described below ("Property").

2. **PROPERTY.**

   Street Address **418 Old Courthouse Rd NE** Unit # _____

   City **Vienna** , Virginia Zip Code **22180-3603**

   TAX Map/ID # **0293100018**

   Parking Space # _____ Storage Unit # _____ Mailbox # _____

   Historic District Designation _____

   Legal Description:

   [X] Lot/Block/Subdivision:

   Lot(s) **18** Block/Square _____ Section **2** Phase _____

   Subdivision or Condominium **Westbriar Country Club**

   County/Municipality **Fairfax** Deed Book/Page # _____

   [ ] Metes/Bounds: see attached description or survey.

   MLS Description:

   No. of Levels: **3** Basement: [X] Yes [ ] No Basement Entrance Type: **Walk-up stairs**

   Basement Type: **Fully Finished** Attic Type: _____

   Architectural Style: **Colonial** Type of Exterior: **Brick**

   Disability Access: [ ] Yes [ ] No

3. **NOTICES.** All notifications and amendments under this Agreement shall be in writing and shall be delivered using the contact information below.

   Seller
   Mailing Address: **1493 Chain Bridge Rd #201**
   City, State, and ZIP Code: **McLean, VA 22101**
   Phone: (H) _____ (W) **(703)556-7871** (Cell) _____
   Email: **janetm@meiburgerlaw.com** Fax: **(703)556-8609**

   Broker (Firm)
   Mailing Address: **3050 Chain Bridge Rd Suite 105**
   City, State, and ZIP Code: **Fairfax, VA 22030**
   Phone: (W) _____ (Cell) **(703)402-3134**
   Email: **703-691-7653** Fax: _____

4. **TERM OF AGREEMENT.** This Agreement shall run for the period commencing upon signature by all parties and expiring at 11:59 p.m. on **August 31, 2020** ("Listing Period"). If a sales contract for Property is ratified during Listing Period which provides for a settlement date beyond Listing Period, this Agreement shall be extended automatically until final disposition of the sales contract.

NVAR - K1336 - rev. 12/19          Page 1 of 12
Berkshire Hathaway HomeServices PenFed Realty - Oakton, 3050 Chain Bridge Rd., #105 Fairfax VA 22030          Phone: 7034023134          Seller JMM  Broker QC
Helaine Newman          Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026 www.zipLogix.com          Castellon House

**5. LISTING PRICE.** Seller instructs Broker to offer Property for sale at a selling price of $ **725,000.00** , or such other price as later agreed upon by Seller, which price includes Broker's compensation. (Note: Broker does not guarantee that Property will appraise or sell at the price stated herein, nor does Broker guarantee any net amount Seller might realize from the sale of Property).

**6. CONVEYANCES.**

**A. Personal Property and Fixtures.** Property includes the following personal property and fixtures, if existing: built-in heating and central air conditioning equipment, plumbing and lighting fixtures, sump pump, attic and exhaust fans, storm windows, storm doors, screens, installed wall-to-wall carpeting, window shades, blinds, window treatment hardware, smoke and heat detectors, TV antennas, exterior trees and shrubs.

Unless otherwise agreed to in writing, all surface or wall mounted electronic components/devices **DO NOT** convey.

If more than one of an item conveys, the number of items is noted. The items marked YES below are currently installed or offered:

| Yes | No | # | Items | Yes | No | # | Items | Yes | No | # | Items |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | Alarm System | | | | Freezer | | | | Satellite Dish |
| | | | Built-in Microwave | | | | Furnace Humidifier | | | | Storage Shed |
| | | | Ceiling Fan | | | | Garage Opener | X | | | Stove or Range |
| | | | Central Vacuum | | | | w/ remote | | | | Trash Compactor |
| X | | | Clothes Dryer | | | | Gas Log | | | | Wall Oven |
| X | | | Clothes Washer | | | | Hot Tub, Equip, & Cover | | | | Water Treatment System |
| | | | Cooktop | | | | Intercom | | | | Window A/C Unit |
| X | | | Dishwasher | | | | Playground Equipment | | | | Window Fan |
| X | | | Disposer | | | | Pool, Equip, & Cover | X | | | Window Treatments |
| | | | Electronic Air Filter | X | | | Refrigerator | | | | Wood Stove |
| | | | Fireplace Screen/Door | | | | w/ ice maker | | | | |

Other: **Property will be sold completely as-is.**

**B. As-Is Items.** Seller will not warrant the condition or working order of the following items and/or systems: _____

**C. As-Is Marketing.** Seller [X] does OR [ ] does not authorize Broker to offer the entire Property in "As-Is" condition.

**D. Leased Items, Systems, and/or Service Contracts.** Any leased items, systems, or service contracts (including, but not limited to, termite or pest control, home warranty, fuel tanks, water treatment systems, lawn contracts, security system monitoring, and satellite contracts) DO NOT CONVEY absent an express written agreement by buyer and Seller. The following is a list of the leased items within Property:

**7. HOMEOWNER WARRANTY.** Seller has the option to purchase a homeowner warranty, which can be in effect during the Listing Period and will transfer to the buyer upon settlement. Seller should review the scope of coverage, exclusions and limitations.
Cost not to exceed $ **NA**                          Warranty provider to be _____

**8. UTILITIES. (Check all that apply)**
Hot Water: ☐ Oil ☒ Gas ☐ Electric ☐ Other _____ Number of Gallons _____
Air Conditioning: ☐ Oil ☐ Gas ☒ Electric ☐ Heat Pump ☐ Other _____ ☐ Zones _____
Heating: ☐ Oil ☒ Gas ☐ Electric ☐ Heat Pump ☐ Other _____ ☐ Zones _____
Water Supply: ☒ Public ☐ Private Well ☐ Community Well
Sewage Disposal: ☒ Public ☐ Septic Approved for _____ Bedrooms
Type of Septic System: ☐ Community ☐ Conventional ☐ Alternative ☐ Experimental

Section 32.1-164.1:1 of the Code of Virginia requires Seller to disclose whether the onsite septic system serving Property is operating under a waiver of repair and/or maintenance requirements imposed by the State Board of Health. If the septic system is operating pursuant to a waiver, then Seller must provide the buyer with the "Disclosure Regarding Validity of Septic System Permit" prior to contract ratification. Such waiver is not transferable to the buyer.

Seller represents that the septic system ☐ is OR ☐ is not operating under a waiver from the State Board of Health.

**9. BROKER DUTIES.** Broker shall perform, and Seller hereby authorizes Broker to perform, the following duties. In performing these duties, Broker shall exercise ordinary care, comply with all applicable laws and regulations and treat all parties honestly.

**A.** Broker shall protect and promote the interests of Seller and shall provide Seller with services consistent with the standards of practice and competence that are reasonably expected of licensees engaged in the business of real estate brokerage. Seller acknowledges that Broker is bound by the bylaws, policies and procedures, and rules and regulations governing the Multiple Listing Service (MLS), the Code of Ethics of the National Association of REALTORS®, the Code of Virginia, and the Regional Rules and Regulations for the electronic lockbox system.

**B.** Broker shall use reasonable efforts and act diligently to seek buyers for Property at the price and terms stated herein or otherwise acceptable to Seller, to negotiate on behalf of Seller, to establish strategies for accomplishing Seller's objectives, to assist in satisfying Seller's contractual obligations, and to facilitate the consummation of the sale of Property.

**C.** Broker shall market Property, at Broker's discretion, including without limitation, description, interior and exterior photographs in appropriate advertising media, such as publications, mailings, brochures and internet sites; provided, however, Broker shall not be obligated to continue to market Property after Seller has accepted an offer.

**D.** Broker shall present all written offers or counteroffers to and from Seller in a timely manner, even if Property is subject to a ratified contract of sale, unless otherwise instructed by Seller in writing.

**E.** Broker shall not continue to market, show and/or permit showings after Property is subject to a ratified contract of sale, unless otherwise instructed by Seller in writing.

**F.** Broker shall account, in a timely manner, for all money and property received in trust by Broker, in which Seller has or may have an interest.

**G.** Broker shall show Property during reasonable hours to prospective buyers and shall accompany or accommodate, as needed, other real estate licensees, their prospective buyers, inspectors, appraisers, exterminators and other parties necessary for showings and inspections of Property, to facilitate and/or consummate the sale of Property.

**Broker agrees that the showing instructions to be shared in the MLS with other real estate licensees and their prospective buyers are as follows:** Schedule online- appointment only- contact listing agent

Broker ☒ shall OR ☐ shall not install an electronic lockbox on Property to allow access and showings by persons who are authorized to access Property.

**H.** Broker ☒ shall OR ☐ shall not install "For Sale" signs on Property, as permitted. Seller is responsible for clearly marking the location of underground utilities, equipment or other items that may be damaged by the placement of the sign.

## 10. MARKETING/MLS/INTERNET ADVERTISING.

**A.** ☒ Seller authorizes OR ☐ Seller does not authorize Broker to market Property via the Multiple Listing Service ("MLS").

1) **If Seller authorizes Broker to market Property in MLS**, Broker shall disseminate, via MLS, information regarding Property, including listing price(s), final sales price, all terms, and all status updates during and after the expiration of this Agreement. Broker shall enter the listing information into MLS ☐ within three (3) business days of commencement of the Listing Period OR ☒ on or before: _____ TBD _____. In either event, Broker shall enter the listing information into MLS within one (1) business day of Public Marketing of Property. "Public Marketing" includes, but is not limited to, displaying flyers in windows, yard signs, digital marketing on public facing websites, brokerage website displays (including internet data exchanges and virtual office websites), digital communications marketing (email blasts), multi-brokerage listing sharing networks, and applications available to the general public.

2) **If Seller does not authorize Broker to market Property via MLS**, Broker shall instead market Property as an Office Exclusive Listing. "Office Exclusive Listing" means any listing Seller has prohibited Broker from Public Marketing. For each Office Exclusive Listing, Seller shall sign and deliver concurrently with this Agreement a "Waiver of Broker Submission to MLS" form or other acceptable certification that Seller does not authorize Broker to Publicly Market the listing via MLS or otherwise. Broker shall submit such waiver or other certification to MLS within three (3) business days of execution of this Agreement.

**B.** ☒ Seller authorizes OR ☐ Seller does not authorize Broker marketing Property through MLS to also make listing data available to third party websites. Seller understands that the listing data may get disseminated to third party websites through means other than MLS regardless of the selection above. Seller acknowledges that the accuracy of the listing data is controlled by the third-party websites and is outside of Broker's control. The parties agree and understand that third party websites include: 1) Broker's internet website; 2) the internet websites of licensed real estate salespersons or associate real estate brokers affiliated with Broker or other brokers participating in MLS; 3) any other internet websites (such as syndicated websites) in accordance with applicable MLS rules and regulations; and/or 4) printed media.

**C.** In the event Seller has opted into marketing Property in the MLS in subparagraph A above, Broker is hereby authorized by Seller to submit and market Property as follows:

☒ Seller authorizes OR ☐ Seller does not authorize the display of Property address on any internet website. In the event Seller does not authorize the display of the property address, only the ZIP code will be displayed.

NVAR - K1336 - rev. 12/19                    Page 4 of 12
Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026 www.zipLogix.com        Seller _____ Broker _____
Castellon House

[X] Seller authorizes OR [ ] Seller does not authorize the display of unedited comments or reviews of Property (or display a hyperlink to such comments or reviews) on MLS participants' internet websites. This provision does not control the display of such comments on third-party websites such as syndicated websites.

[X] Seller authorizes OR [ ] Seller does not authorize the display of an automated estimate of the market value of Property (or a hyperlink to such estimate) on MLS participants' internet websites. This provision does not control the display of such estimated value of Property on third-party websites such as syndicated websites.

**D.** [X] Seller authorizes OR [ ] Seller does not authorize Broker to list Property under "coming soon" status in MLS. If Seller authorizes Broker to list Property under "coming soon" status in MLS, Broker shall list Property under "coming soon" status in MLS [ ] within three (3) business days of commencement of the Listing Period OR [X] on or before: _____**TBD**_____ . Property may be listed in the MLS under "coming soon" status for no more than 21 days from the date the listing is entered in MLS. Broker may engage in pre-marketing activities prior to the date that Property is entered in MLS under "active" status including, but not limited to: 1) placing a "coming soon" sign on Property; 2) notifying agents with other firms that Property is "coming soon"; and 3) placing advertisements and conduct other pre-marketing activities at Broker's discretion. Broker shall not show Property to prospective buyers or tenants and/or their agents while under "coming soon" status.

**E.** During the term of this Agreement, Seller may, by written notice to Broker, authorize Broker to enable or disable use of any feature as described above. Broker agrees to update MLS database accordingly.

**11. TYPES OF REAL ESTATE REPRESENTATION – DISCLOSURE AND INFORMED CONSENT.**

**Seller representation** occurs by virtue of this Agreement with Seller's consent to use Broker's services and may also include any cooperating brokers who act on behalf of Seller as subagent of Broker. (Note: Broker may assist a buyer or prospective buyer by performing ministerial acts that are not inconsistent with Broker's duties as Seller's listing agent under this Agreement.)

**Buyer representation** occurs when buyers contract to use the services of their own broker (known as a buyer representative) to act on their behalf.

**Designated representation** occurs when a buyer and seller in one transaction are represented by different sales associate(s) affiliated with the same broker. Each of these sales associates, known as a designated representative, represents fully the interests of a different client in the same transaction. Designated representatives are not dual representatives if each represents only the buyer or only the seller in a specific real estate transaction. In the event of designated representatives, each representative shall be bound by client confidentiality requirements, set forth in the CONFIDENTIAL INFORMATION paragraph. The broker remains a dual representative.

[X] Seller does not consent to designated representation and does not allow Property to be shown to a buyer represented by this Broker through another designated representative associated with the firm.
**OR**
[ ] Seller consents to designated representation and allows Property to be shown to a buyer represented by this Broker through another designated representative associated with the firm.

**Dual representation** occurs when the same broker and the same sales associate represent both the buyer and seller in one transaction. In the event of dual representation, the broker shall be bound by confidentiality requirements for each client, set forth in the CONFIDENTIAL INFORMATION paragraph.

[X] Seller does not consent to dual representation and Seller does not allow Property to be shown to a buyer represented by this Broker through the same sales associate. **OR**
[ ] Seller consents to dual representation and allows Property to be shown to a buyer represented by this Broker through the same sales associate.

NVAR - K1336 - rev. 12/19                Page 5 of 12
Produced with zipForm® by zipLogix 10070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com
Seller _____ Broker: _____
Castellon House

**An additional disclosure is required before designated or dual representation is to occur for a specific transaction.**

Broker shall notify other real estate licensees via MLS whether Seller consents to designated or dual representation.

12. **BROKER COMPENSATION.**

   A. **Payment.** Seller shall pay Broker in cash total compensation of <u>6 %*</u>_____ _____ ("Compensation") if, during the term of this Agreement, anyone produces a buyer ready, willing and able to buy Property.

   Compensation is also earned if, within <u>30</u> days after the expiration or termination of this Agreement, a contract is ratified with a ready, willing, and able buyer to whom Property had been shown during the term of this Agreement; provided, however, that Compensation need not be paid if a contract is ratified on Property while Property is listed with another real estate company.

   B. **Cooperating Broker.** Broker shall make a blanket unilateral offer of cooperation and compensation to other brokers in any MLS that Broker deems appropriate. To that end, Broker shall offer a portion of Compensation to the cooperating broker as indicated:

   Buyer Agency Compensation:    <u>3%*</u>_____ **OR**

   Other Compensation:    <u>NA</u>_____

   *Note: Compensation may be shown by a percentage of the gross selling price, a definite dollar amount or "N" for no compensation.*

   *Broker's compensation and the sharing of compensation between brokers are not fixed, controlled, recommended or suggested by any multiple listing service or association of REALTORS®.*

   C. **Variable Rate Commission.** If applicable, the Broker and Seller agree to a variable rate commission to be paid as follows: _____ .

   D. **Retainer Fee.** Broker acknowledges receipt of a retainer fee in the amount of _____ which ☐ shall **OR** ☒ shall not be subtracted from Compensation. The retainer fee is non-refundable and is earned when paid.

   E. **Early Termination.** In the event Seller wishes to terminate this Agreement prior to the end of Listing Period, without good cause, Seller shall pay Broker <u>NA</u>_____ before Broker's execution of a written release.

13. **CONFIDENTIAL INFORMATION.** Broker shall maintain the confidentiality of all personal and financial information and other matters identified as confidential by Seller which were obtained by Broker during the brokerage relationship, unless Seller consents in writing to the release of such information or as otherwise provided by law. The obligation of Broker to preserve confidential information continues after termination of the brokerage relationship. Information concerning latent material defects about Property is not considered confidential information.

14. **AUTHORIZATION TO DISCLOSE OTHER OFFERS.** In response to inquiries from buyers or cooperating brokers, Broker may not disclose, without Seller's authorization, the existence of other offers on Property. If Seller does give such authorization, Seller acknowledges that Broker and sales associate(s) must disclose whether the offers were obtained by the listing agent, another member of the listing Broker's firm, or by a cooperating broker.

   Seller ☒ does **OR** ☐ does not authorize Broker and sales associate(s) to disclose such information to buyers or cooperating brokers.

15. **COMPLIANCE WITH FAIR HOUSING LAWS.** Property shall be shown and made available without regard to race, color, religion, sex, handicap, familial status, or national origin as well as all classes protected by the laws of the United States, the Commonwealth of Virginia, and applicable local jurisdictions, or by the REALTOR® Code of Ethics.

**16. RELOCATION PROGRAM.** Seller is participating in any type of relocation program:

☐ Yes **OR** ☒ No

If "Yes": (a) the program is named: _____

Contact Name _____ Contact Information _____

and (b) terms of the program are: _____

If "No" or if Seller has failed to list a specific employee relocation program, then Broker shall have no obligation to cooperate with or compensate any undisclosed program.

**17. CONDOMINIUM ASSOCIATION.** Seller represents that Property ☐ is **OR** ☒ is not located within a development which is a Condominium or Cooperative. Condominiums or Cooperatives being offered for sale are subject to the receipt by buyers of the required disclosures, and Seller is responsible for payment of appropriate fees and for providing these disclosure documents to prospective buyers as prescribed in the Condominium Act, Section 55.1-1900, et seq., and the Cooperative Act, Section 55.1-2100, et seq., of the Code of Virginia.

☐ Seller **OR** ☐ Broker shall order the association disclosure documents at Seller's expense

☐ at the time of listing **OR** ☐ within 3 days following the date of contract ratification **OR**

☐ _____

The Condominium or Cooperative dues are $ _____ per _____ (frequency of payment).

Special Assessment $ _____ for _____

Condominium or Cooperative Association Name: _____

Management Company: _____ Phone #: _____

Seller represents that Seller ☐ is **OR** ☐ is not current on all condominium association dues and/or special assessments.

**18. PROPERTY OWNERS' ASSOCIATION.** Seller represents that Property ☐ is **OR** ☒ is not located within a development(s) which is subject to the Virginia Property Owners' Association Act, Section 55.1-1800, et seq., of the Code of Virginia. If Property is within such a development, Seller is responsible for payment of the appropriate fees and for providing these disclosure documents to the buyers.

☐ Seller **OR** ☐ Broker shall order the association disclosure documents at Seller's expense

☐ at the time of listing **OR** ☐ within 3 days following the date of contract ratification **OR**

☐ _____ .

The Property Owners' Association dues are $ _____ per _____ (frequency of payment).

Special Assessment $ _____ for _____

Property Owners' Association Name: _____

Management Company: _____ Phone #: _____

Seller represents that Seller ☐ is **OR** ☐ is not current on all property owners' association dues and/or special assessments.

**19. PROPERTY CONDITION.** Seller acknowledges that Broker has informed Seller of Seller's rights and obligations under the Virginia Residential Property Disclosure Act. Property ☐ is **OR** ☒ is not exempt from the Act. If not exempt, Seller has completed and provided to Broker a Residential Property Disclosure Statement, or any other applicable disclosures as may be required.

Seller acknowledges Broker is required to disclose to prospective buyers all material adverse facts pertaining to the physical condition of Property actually known by Broker. Broker shall not, however, be obligated to discover latent defects in Property or to advise on property condition matters outside the scope of Broker's real estate license. Seller shall indemnify, save, and hold Broker harmless from all claims, complaints, disputes, litigation, judgments and attorney's fees arising from any incorrect information supplied by Seller or from Seller's failure to disclose any material adverse facts.

20. **LEAD-BASED PAINT DISCLOSURE.** Seller represents that the residential dwelling(s) at Property [X] were **OR** [ ] were not constructed before 1978. If the dwelling(s) were constructed before 1978, Seller is subject to federal law concerning disclosure of the possible presence of lead-based paint at Property, and Seller acknowledges that Broker has informed Seller of Seller's obligations under the law. If the dwelling(s) were constructed before 1978, unless exempt under 42 U.S.C. 4852(d), Seller has completed and provided to Broker the form, "Sale: Disclosure And Acknowledgment Of Information On Lead-Based Paint And/Or Lead-Based Paint Hazards" or equivalent form.

21. **CURRENT LIENS.** Seller represents to Broker that the below information is true and complete to the best of Seller's information, knowledge, and belief and Seller understands that any loans identified below will be paid off at Settlement: *(Check all that are applicable)*

A. [ ] Property is not encumbered by any mortgage or deed of trust *(if box is checked, skip to G)*

B. [ ] Property is security for a first mortgage or deed of trust loan held by (Lender Name): _____ with an approximate balance of $ _____ .
This loan is a [ ] Conventional OR [ ] FHA or [ ] VA or [ ] _____ .

C. [ ] Property is security for a second mortgage or deed of trust loan held by (Lender Name): _____ with an approximate balance of $ _____ .

D. [ ] Property is security for a line of credit or home equity line of credit held by (Lender Name): _____ with an approximate balance of $ _____ .

E. [ ] Seller is current on all payments for the loans identified above.

F. [ ] Seller is not in default and has not received any notice(s) from the holder(s) of any loan identified above, or from any other lien holder of any kind, regarding a default under any loan, threatened foreclosure, notice of foreclosure, or the filing of foreclosure.

G. [ ] There are no liens secured against Property for federal, state, or local income taxes; unpaid real property taxes; or unpaid condominium or homeowners' association fees or special assessments.

H. [ ] There are no judgments against Seller (including each owner for jointly held property). Seller has no knowledge of any matter that might result in a judgment that may potentially affect Property.

I. [ ] Seller has not filed for bankruptcy protection under Federal law and is not contemplating doing so during the term of this Agreement.

In the event Property is encumbered by a loan, Seller further agrees that Seller shall promptly disclose the name and contact information for the lender and account number to the Settlement Agent identified in a contract for the sale of the Property.

During the term of this Agreement, should any change occur with respect to answers A. through I. above, Seller shall immediately notify Broker and sales associate/listing agent, in writing, of such change.

22. **SELLER FINANCING.** Seller [ ] does **OR** [X] does not agree to offer seller financing by providing a _____ deed of trust loan in the amount of $ _____ with further terms to be negotiated.

Seller _____ Broker _____
Castellon House

23. **CLOSING COSTS.** Fees for the preparation of the deed of conveyance, that portion of the settlement agent's fee billed to Seller, costs of releasing existing encumbrances, Seller's legal fees, Grantor's Tax, and any other proper charges assessed to Seller will be paid by Seller unless provided otherwise in the sales contract.

The "Seller's Estimated Cost of Settlement" form ☐ is **OR** ☒ is not attached. These estimates are for informational purposes only and will change based upon the terms and conditions of the purchase offer.

> **Seller's Proceeds:** The Seller acknowledges that Seller's proceeds may not be available at the time of settlement. The receipt of proceeds may be subject to Section 55.1-903 of the Code of Virginia, commonly referred to as the **Virginia Wet Settlement Act**, and may be subject to other laws, rules and regulations (e.g. Virginia estate statutes and the **Foreign Investment in Real Property Tax Act - FIRPTA**).
>
> **Seller is advised to seek legal and/or financial advice concerning these matters.**

24. **IRS/FIRPTA.** Section 1445 of the Internal Revenue Service (IRS) Code may require a buyer or the settlement agent to report the gross sales price, Seller's federal tax identification number and other required information to the IRS. Seller shall provide to a buyer or the settlement agent such information upon request. In certain situations, the IRS requires a percentage of the sales price to be withheld from Seller's proceeds if Seller is a Foreign Person as defined by FIRPTA.

Seller ☐ is **OR** ☒ is not a "Foreign Person" as defined by FIRPTA.

25. **SELLER DUTIES.**

*JMM*

A. **Seller Representations and Warranties.** Seller is aware that Seller may be responsible for failing to disclose information and/or misrepresenting the condition of Property. Seller certifies the accuracy of the information provided to the Listing Broker and Seller warrants:

1) 1) Seller ~~has~~ *will have* capacity to convey good and marketable title to Property by ~~general~~ *special* warranty deed and represents that Property ~~is~~ *will be* insurable by a licensed title insurance company *with no additional risk* premium. *✓ upon court approval*

2) Seller is not a party to a listing agreement with another broker for the sale, exchange, or lease of Property.

3) No person or entity has the right to purchase, lease or acquire Property, by virtue of an option, right of first refusal or otherwise.

4) Seller ☐ is **OR** ☒ is not a licensed (active/inactive) real estate agent/broker.

5) Seller ☐ has **OR** ☒ has no knowledge of the existence, removal or abandonment of any underground storage tank on Property.

6) Property ☐ is **OR** ☒ is not tenant-occupied.

7) Seller ☐ has **OR** ☒ does not have a recording system in Property. In the event Seller has a recording system in Property which records audio, Seller understands that recording of audio may result in violation of state and/or federal wiretapping laws. Therefore, Seller hereby releases and holds harmless Broker, Broker's designated agents, sub-agents, sales associates and employees from any liability which may result from the recording of audio in Property.

B. **Access to Property.** Seller shall provide keys to Broker for access to Property to facilitate Broker's duties under this Agreement. Seller shall allow Broker's unlicensed assistants in Property to perform ministerial acts as defined by 18VAC135-20-165.

If Property is currently tenant-occupied, Seller shall provide Broker with any current lease documents and contact information for current tenant and shall use best efforts to obtain the full cooperation of current tenants, in connection with showings and inspections of Property.

Seller: *JMM*  Broker
Castellon House

**C. Seller Assumption of Risk.**
1) Seller retains full responsibility for Property, including all utilities, maintenance, physical security and liability until title to Property is transferred to buyer. Seller is advised to take all precautions for safekeeping of valuables and to maintain appropriate property and liability insurance through Seller's own insurance company.

   Broker is not responsible for the security of Property or for inspecting Property on any periodic basis. If Property is or becomes vacant during the Listing Period, Seller is advised to notify Seller's homeowner's insurance company and request a "Vacancy Clause" to cover Property.

2) In consideration of the use of Broker's services and facilities and of the facilities of any MLS, Seller and Seller's heirs and assigns hereby release Broker, Broker's designated agents, sub-agents, sales associates and employees, any MLS and the directors, officers and employees thereof, including officials of any parent Association of REALTORS®, except for malfeasance on the part of such parties, from any liability to Seller for vandalism, theft or damage of any nature whatsoever to Property or its contents that occurs during the Listing Period. Seller waives any and all rights, claims and causes of actions against them and holds them harmless for any property damage or personal injury arising from the use or access to Property by any persons during Listing Period.

## 26. MISCELLANEOUS PROVISIONS.

**A. Appropriate Professional Advice.** Broker can counsel on real estate matters, but if Seller desires legal advice, Seller is advised to seek legal counsel. Seller is advised further to seek appropriate professional advice concerning, but not limited to, the condition of Property or tax and insurance matters.

**B. Service Provider Referrals.** Broker or one of Broker's sales associates may refer a service provider to assist Seller in this transaction. This referral is not an endorsement, guarantee or warranty as to the quality, cost and/or timeliness of the services to be provided. Seller is advised to independently investigate all options for service providers and consider whether any service provider will work effectively with Seller. Seller is free to reject any referred service provider for any or no reason.

**C. Wire Fraud.** Seller should never transmit nonpublic personal information, such as credit or debit card, bank account or routing numbers, by email or other unsecured electronic communication. There are numerous e-mail phishing scams that involve fraudulent requests to wire funds in conjunction with a real estate transaction. If Seller receives any electronic communication directing the transfer of funds or to provide nonpublic personal information, even if that electronic communication appears to be from a representative of Broker, do not respond. Such requests, even if they may otherwise appear to be from Broker, could be part of a scheme to defraud Seller by misdirecting the transfer of sale proceeds or using Seller's identity to commit a crime. If Seller should receive wiring instructions via electronic means that appear to be from a legitimate source involved in Seller's real estate transaction, Seller should verify - using contact information other than that provided in the communication - that the instructions were sent by an actual representative of the requesting company. Conversely, if Seller has provided wiring instructions to a third party, it is important to confirm with the representative of said company that the wire instructions are not to be substituted without Seller's verified written consent. When wiring funds, never rely exclusively on an e-mail, fax or text communication.

**D. Subsequent Offers After Contract Acceptance.** After a sales contract has been ratified on Property, Broker recommends Seller obtain the advice of legal counsel prior to acceptance of any subsequent offer.

**E. Governing Law.** The laws of the Commonwealth of Virginia shall govern the validity, interpretation, and enforcement of this Agreement.

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com

Seller _____  Broker: _____
Castellon House

F. **Binding Agreement.** This Agreement will be binding upon the parties, and each of their respective heirs, executors, administrators, successors and permitted assigns. The provisions hereof will survive the sale of Property and will not be merged therein. This Agreement, unless amended in writing by the parties, contains the final and entire agreement and the parties will not be bound by any terms, conditions, oral statements, warranties or representations not herein contained.

27. **ATTORNEYS' FEES.** If any Party breaches this Agreement and a non-breaching Party retains legal counsel to enforce its rights hereunder, the non-breaching Party shall be entitled to recover against the breaching Party, in addition to any other damages recoverable against any breaching Party, all of its reasonable Legal Expenses incurred in enforcing its rights under this Agreement, whether or not suit is filed, and in obtaining, enforcing and/or defending any judgment related thereto. Should any tribunal of competent jurisdiction determine that more than one Party to the dispute has breached this Agreement, then all such breaching Parties shall bear their own costs. However, if the tribunal determines that one or more of the Parties is a "Substantially Prevailing Party," any such Substantially Prevailing Party shall be entitled to recover from any of the breaching Parties, in addition to any other damages recoverable against any breaching Party, all of its reasonable Legal Expenses incurred in enforcing its rights under this Agreement, whether or not suit is filed, and in obtaining, enforcing and/or defending any judgment related thereto. "Party" as used in this paragraph includes any third-party beneficiary identified herein. "Legal Expenses" as used in this paragraph includes attorneys' fees, court costs, and litigation expenses, if any, including, but not limited to, expert witness fees, and court reporter fees.

28. **ADDITIONAL TERMS.** *All terms of listing and sale are subject to bankruptcy court and short sale lender approval.  Property will be sold completely as-is.

_____

_____

_____

_____

2/17/2020 / _Janet M Meiburger_         2/ /2020 / _Jeremy Cunningham_
Date        Seller                          Date        Broker/Sales Manager
**Janet M. Meiburger, Bankruptcy Trustee**          **Jeremy Cunningham**
for Mariel Alejandra Castellon Case # 19-13963

_____/_____
Date        Seller

_____/_____
Date        Seller

_____/_____
Date        Seller

Seller                Broker
Castellon House

**********************************************************************

### Sales Associate Contact Information

Sales Associate (Listing Agent): <u>Helaine Newman</u>

Team Name (if applicable): _____

Phone: (W) <u>(703)691-7653</u> _____ (Cell) <u>(703)402-3134</u> _____

Email: <u>Helainesells@gmail.com</u> _____ (Fax) _____

### Supervising Broker Contact Information

Broker Name: <u>Jeremy Cunningham</u> _____

Phone: (W) <u>(703)691-7653</u> _____ (Cell) <u>(703)955-1832</u> _____

Email: <u>Steve.dussek@longandfoster.com</u> _____ Fax: _____

© 2019 Northern Virginia Association of REALTORS®, Inc.

This is a suggested form of the Northern Virginia Association of REALTORS®, Inc. ("NVAR"). This form has been exclusively printed for the use of REALTOR® members of NVAR, who may copy or otherwise reproduce this form in identical form with the addition of their company logo. Any other use of this form by REALTOR® members of NVAR, or any use of this form whatsoever by non-members of NVAR is prohibited without the prior written consent of NVAR. Notwithstanding the above, no REALTOR® member of NVAR, or any other person, may copy or otherwise reproduce this form for purposes of resale.



REALTOR®



EQUAL HOUSING OPPORTUNITY



**BERKSHIRE HATHAWAY**
HomeServices
PenFed Realty

## AFFILIATED BUSINESS ARRANGEMENT DISCLOSURE STATEMENT
## PENFED REALTY, LLC

To:  Janet M. Meiburger, Bankruptcy Trustee   *for Mariel Alejandra Castellon Case# 19-13963*

From:  PenFed Realty, LLC d/b/a Berkshire Hathaway Homeservices PenFed Realty d/b/a Berkshire Hathaway Homeservices PenFed Realty Texas

Property:  418 Old Courthouse Rd NE, Vienna,  22180-3603

Date:  February 14, 2020

This is to give you notice that PenFed Realty, LLC d/b/a Berkshire Hathaway HomeServices PenFed Realty, d/b/a Berkshire Hathaway Homeservices PenFed Realty Texas ("PenFed Realty") has business relationships with the Pentagon Federal Credit Union ("PenFed"), which provides mortgage financing, and the following companies, all of which provide title insurance and/or closing/settlement services: PenFed Title, LLC ("PenFed Title"); Prestige Title & Escrow, LLC ("Prestige"); Members Title LLC, a Texas LLC ("MTTX"); Members Title Company of California, Inc. ("MTCA"); Members Title LLC, a Maryland LLC d/b/a Brandview Title ("MTMD"); Capitol Title Insurance Agency, Inc. ("CTIA"); Closeline Acquisitions, LLC ("Closeline"); Champion Title & Settlements, Inc. ("Champion Title"); and Kase & Associates, P.C. ("Kase").

Specifically: PenFed owns 100% of PenFed Realty and PenFed Title. PenFed Title owns 100% of MTTX and MTCA. Closeline owns 100% of Affiliated Services, LLC and CTIA. PenFed Title and Affiliated Services, LLC each has a 50% ownership interest in MTMD. PenFed Title has a 60% ownership interest in Prestige, and Champion Holdings, LLC ("Champion Holdings") has a 40% ownership interest in Prestige. Principals of Champion Holdings also have ownership interests in Champion Title, and a principal of Champion Holdings also owns 100% of Kase. None of the PenFed, PenFed Realty, PenFed Title, Prestige, MTTX, MTCA, MTMD, Affiliated Services, LLC, CTIA, or Closeline has any ownership interest in Champion Holdings, Champion Title, or Kase. Because of these relationships, this referral may provide PenFed, PenFed Realty, PenFed Title, Prestige, MTTX, MTCA, MTMD, CTIA, Affiliated Services, LLC, Closeline, Champion Holdings, Champion Title, Kase, or any of their principals and affiliates, a financial or other benefit.

Set forth below is the estimated range of charges for the settlement services listed. You are NOT required to use the listed provider(s) as a condition for the purchase or sale of the subject property. THERE ARE FREQUENTLY OTHER SETTLEMENT SERVICE PROVIDERS AVAILABLE WITH SIMILAR SERVICES. YOU ARE FREE TO SHOP AROUND TO DETERMINE THAT YOU ARE RECEIVING THE BEST SERVICES AND THE BEST RATE FOR THESE SERVICES.

| Provider/Settlement Service | Charge/Range of Charges |
|---|---|
| PenFed | |
| Origination | 0% to 6% of loan amount |
| Appraisal | $350 - $750 |
| Credit Report | $9.75 - $16.50 |
| Tax Service | $37.50 - $65 |
| Flood Certification | $7 |
| CLO Access | $65 |
| PenFed Title/Prestige/MTTX/MTCA/MTMD/ | |
| CTIA/Closeline/Champion Title | |
| Lender's Coverage | $0.32 to $5.70 per thousand of loan amount |
| Owner's Coverage | $2.40 to $6.84 per thousand of sales price |
| Settlement | $200 - $825 |
| Title Examination | $75 - $550 |
| Document Preparation | $100 - $375 |
| Recording Services | $50 - $200 |
| Photocopies, miscellaneous | $35 - $200 |
| Kase | |
| Deed/Document Preparation | $100 - $500 |
| Settlement | $150 - $250 |
| Recording Services | $35 - $75 |

## ACKNOWLEDGEMENT

I/we have read this disclosure form, and understand that PenFed Realty, LLC is referring me/us to purchase the above described settlement service(s) and may receive a financial or other benefit as the result of this referral.

_Janet M Meiburger_   2/17/2020      _(signature)_      2/15/2020
Buyer's or Seller's Signature     Date      Buyer or Seller's Signature      Date
Janet M. Meiburger, Bankruptcy Trustee
*for Mariel Alejandra Castellon*
REV 6/19      *case # 19-13963*      _JMM_

Berkshire Hathaway HomeServices PenFed Realty - Oakton, 3850 Chain Bridge Rd., 8105 Fairfax VA 22030      Phone: 7034023134      Fax: 7036917662      Castellon House
Helaine Neuman      Produced with zipForm® by zipLogix  18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com



BERKSHIRE HATHAWAY HomeServices | PenFed Realty

**WIRE FRAUD ADDENDUM**

## FRAUD WARNING – VERY IMPORTANT

Wire fraud has increased in real estate transactions nationwide. Fraudsters are contacting purchasers, sellers and real estate professionals with fraudulent wiring instructions. In many of these cases, buyers and sellers are receiving emails that appear to be from a real estate agent, loan officer or a title company representative. These emails request that additional funds be wired to a bank account. Once wired the funds are usually not recoverable.

This addendum is to inform you that PenFed Realty, LLC, d/b/a Berkshire Hathaway HomeServices PenFed Realty ("PenFed Realty") will not provide **any** wiring instructions to you regarding this transaction. In addition, PenFed Realty will not provide you with wiring instructions for any title or settlement companies. If you are wiring funds directly to a title or settlement company, we recommend contacting the title or settlement company directly for the wiring instructions and to be suspicious of any requested changes to the wiring instructions.

**Before you wire any funds, verify that the request for funds is legitimate. Do not respond to any email requesting a wire transfer of funds without calling the source of the request.**

By signing below I/we acknowledge the increasing fraud involving wire fraud and real estate transactions and hereby hold harmless and indemnify PenFed Realty from and against any and all liabilities, loss, or damages suffered as a result of any claim, demand, suit, costs, or judgment (including attorneys' fees), arising out of any wire transaction I/we authorize.

Case # 19-13963

Name: Janet M. Meiburger, Bankrtuptcy Trustee  *For Mariel Alejandra Castellon*

Signature: *Janet M Meiburger*    Date: 2/17/2020

Name: _____

Signature: _____    Date: _____

REV 7/17

# SALE: DISCLOSURE AND ACKNOWLEDGMENT OF INFORMATION ON LEAD-BASED PAINT AND/OR LEAD-BASED PAINT HAZARDS

For the sale of the Property at: <u>418 Old Courthouse Rd NE, Vienna,  22180-3603</u>

**Lead Warning Statement**

*Every purchaser of any interest in residential real property on which a residential dwelling was built prior to 1978 is notified that such property may present exposure to lead from lead-based paint that may place young children at risk of developing lead poisoning. Lead poisoning in young children may produce permanent neurological damage, including learning disabilities, reduced intelligence quotient, behavioral problems, and impaired memory. Lead poisoning also poses a particular risk to pregnant women. The seller of any interest in residential real property is required to provide the buyer with any information on lead-based paint hazards from risk assessments or inspections in the seller's possession and notify the buyer of any known lead-based paint hazards. A risk assessment or inspection for possible lead-based paint hazards is recommended prior to purchase.*

**Seller's Disclosure (Initial)**

*JMM* / _____    (a) Presence of lead-based paint and/or lead-based paint hazard (check one below):
       ☐   Known lead-based paint and/or lead-based paint hazards are present in the housing (explain):
       _____

*JMM* / _____    ☒   Seller has no knowledge of lead-based paint and/or lead-based paint hazards in the housing.
       (b) Records and Reports available to the seller (check one below):
       ☐   Seller has provided the purchaser with all available records and reports pertaining to lead-based paint and/or lead-based paint hazards in the housing (list documents below):
       _____

       ☒   Seller has no reports or records pertaining to lead-based paint and/or lead-based paint hazards in the housing.

**Purchaser's Acknowledgment (Initial)**

_____ / _____    (c) Purchaser has received and had an opportunity to review copies of all information listed above.
_____ / _____    (d) Purchaser has received the pamphlet *Protect Your Family From Lead In Your Home.*
_____ / _____    (e) Purchaser has(check one below):
       ☐   Received a 10-day opportunity (or mutually agreed upon period) to conduct a risk assessment or inspection for the presence of lead-based paint or lead-based paint hazards; or
       ☐   Waived the opportunity to conduct a risk assessment or inspection for the presence of lead-based paint and/or lead-based paint hazards.

**Sales Associates' Acknowledgments (Initial)**

_____ / _____    (f) Listing and Selling Sales Associates are aware of their duty to ensure compliance with 42 U.S.C. 4852d. These Associates have informed the Seller of the Seller's obligations under this law as evidenced by Seller and Purchaser having completed this form.

**Certification of Accuracy**

The undersigned have reviewed the information above and certify that to the best of their knowledge the information they have provided is true and accurate.

**SELLER:**                                                 **PURCHASER:**

2/17/2020 / *Janet M Melburger* _____     _____ / _____
Date      Signature                                           Date       Signature
         Janet M. Melburger, Bankrtuptcy Trustee

_____ / _____                                _____ / _____
Date      Signature                                           Date       Signature

_____ / _____                                _____ / _____
Date      Signature of Listing Associate                    Date       Signature of Selling Associate
         Helaine Newman

© 2008 Northern Virginia Association of REALTORS®, Inc.

This is a suggested form of the Northern Virginia Association of REALTORS®, Inc. ("NVAR"). This form then has been exclusively printed for the use of REALTOR® and Non-Resident members of NVAR, who may copy or otherwise reproduce this form in identical form with the addition of their company logo. Any other use of this form by REALTOR® and Non-Resident members of NVAR, or any use of this form whatsoever by non-members of NVAR is prohibited without the prior written consent of NVAR. Notwithstanding the above, no REALTOR® or Non-Resident member of NVAR, or any other person, may copy or otherwise reproduce this form for purposes of resale.



NVAR – K1034

# EXHIBIT B

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## ALEXANDRIA DIVISION

IN RE:                         )

                             )

MARIEL ALEJANDRA CASTELLON    )    Case No. 19-13963-KHK

                           )

                           )    Chapter 7

      Debtor                )

## DECLARATION OF HELAINE NEWMAN

I, Helaine Newman, declare as follows:

1.    I am a licensed sales agent affiliated with Berkshire Hathaway Home Services-PenFed Realty.  I am licensed in Virginia and have experience in the real estate profession.

2.    I am submitting this declaration in support of the Trustee's Application for Approval of Real Estate Listing Agreement and Employment of Realtor, which seeks approval of a listing agreement with Berkshire Hathaway Home Services-PenFed Realty for the sale of the real property located 418 Old Courthouse Road, NE, Vienna, VA 22180 (the "Property").

3.    I have reviewed the list of creditors in this case and a list of the persons employed in the Office of the United States Trustee.  I have no connection with the Trustee, any party in interest in this case or their attorneys or accountants, or the United States Trustee or any persons employed in the Office of the United States Trustee, except that I have been employed as realtor in other cases in which Janet M. Meiburger served as Chapter 7 trustee.

4.    I do not represent any interest adverse to the bankruptcy estate in the matters upon which I am to be employed.

5.    I have not received any payments in connection with this case.

6.　　I understand that the six percent (6%) commission provided for in my listing agreement with the Trustee (the "Listing Agreement"), is subject to approval by the Bankruptcy Court and will be paid solely from the proceeds of the sale of the Property.

7.　　I have not shared or agreed to share any portion of the commissions I earn for work in this matter with any other person, except as provided in the Listing Agreement, which permits me to share my commissions with subagents and buyer agents.

8.　　I have not received, or agreed to receive, any payment in this case except as set forth herein.

　　　　　　　　　　　　/s/ Helaine Newman
　　　　　　　　　　　　Helaine Newman

　　　　　　　　　　　　Date:　2/ 14 /2020

J:\Trustee\Castellon, Mariel Alejandra (19-13963)\Pleadings\Employment Applications\Application to Employ Realtor.1.Declaration.doc

2

# EXHIBIT C

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| IN RE: | ) |
| | ) |
| MARIEL ALEJANDRA CASTELLON | )    Case No. 19-13963-KHK |
| | ) |
| | )    Chapter 7 |
| Debtor | ) |
| | ) |

**ORDER APPROVING REAL ESTATE LISTING**
**AGREEMENT AND EMPLOYMENT OF REALTOR**

UPON CONSIDERATION of the Trustee's Application for Approval of Real Estate

Listing Agreement and Employment of Realtor (the "Application"), and it appearing to the Court

that the Application is proper and should be granted, it is by the Court

ORDERED, that the Listing Agreement attached to the Application be, and hereby is,

approved; and it is further

ORDERED, that Helaine Newman of Berkshire Hathaway Home Services-PenFed Realty

be, and she is hereby, authorized and designated as the listing agent for the real property located

at 418 Old Courthouse Road, NE, Vienna, VA 22180, with her compensation, if any, to be

subject to further order of the Court; and it is further

ORDERED, that no agent or broker in any Berkshire Hathaway Home Services-PenFed

Realty office may represent a buyer for the purchase of 418 Old Courthouse Road, NE, Vienna,

VA 22180, except as approved by the Court; and it is further

ORDERED, that an agent or broker operating from a franchised, independently owned

and operated, Berkshire Hathaway Home Services-PenFed Realty office may represent a buyer

for the purchase of 418 Old Courthouse Road, NE, Vienna, VA 22180; and it is further

ORDERED, that any provision in the Listing Agreement, attached to the Application, allowing designated representation or dual representation by agents or brokers in a Berkshire Hathaway Home Services-PenFed Realty office is not approved and not permitted except as set forth herein.

Date:_____

_____
UNITED STATES BANKRUPTCY JUDGE

Entered on Docket:_____

I ASK FOR THIS:

/s/ Janet M. Meiburger_____
Janet M. Meiburger, Esq., VSB No. 31842
The Meiburger Law Firm, P.C.
1493 Chain Bridge Road, Suite 201
McLean, Virginia 22101
Phone: (703) 556-7871

SEEN AND NO OBJECTION:

/s/ Jack I. Frankel_____
Jack I. Frankel, Esq.
Office of the United States Trustee
1725 Duke Street, Suite 650
Alexandria, VA 22314
Phone: (703) 557-7229

**PARTIES TO RECEIVE COPIES BY MAIL**

Helaine Newman
Berkshire Hathaway Home Services-PenFed Realty
3050 Chain Bridge Road, Suite 105
Oakton, VA 22030